IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FRANK HORAK, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:05-CV-901-K |
| § | |
| GLAZER'S WHOLESALE DRUG § | |
| COMPANY, INC. D/B/A GLAZER § | |
| DISTRIBUTORS, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion for Summary Judgment, filed May 5, 2006. After review and consideration of the motion, response, reply, summary judgment evidence, pleadings on file in this case, and the applicable law, the court has determined that Plaintiff Frank Horak ("Horak") has failed establish a *prima facie* case of age discrimination, and also has not raised a genuine issue of material fact whether Defendant's decision to terminate his employment was either a pretext for or motivated by age discrimination. Therefore, the court **grants** the motion.

**I.    Factual and Procedural Background**

Plaintiff Horak began his employment with Longhorn Liquors in 1970, and held various positions throughout his tenure there. In November 2002, Longhorn Liquors ("Longhorn") was acquired by Defendant Glazer's Wholesale Drug Co., Inc. ("Glazer's"). Glazer's is a wholesale liquor distribution business. At that time, Horak held the position of Executive Vice President – Sales for Longhorn, and earned an annual salary of $144,000 plus a bonus of $22,000.

Following its purchase of Longhorn, Glazer's hired all Longhorn employees who were interested in positions with Glazer's. Horak accepted the position of Key Accounts Manager with

1

Glazer's. In his new role, Horak reported to General Sales Manger Daniel O'Donovan ("O'Donovan"), who in turn reported to Regional Sales Manager Tim McNamara ("McNamara"). McNamara reported to Skip Carleton ("Carleton"), who was the regional vice-president for Glazer's North Texas sales and operations, and Carleton's direct supervisor was Ralph Townes ("Townes"), the president of Glazer's Texas. In his Key Accounts Manager position, Horak remained at the same salary and bonus as he had earned with Longhorn.

Horak's Key Accounts Manager position was a newly-created position that was intended to take advantage of Horak's long-standing contacts in the industry. Horak worked in Glazer's Mustang Spirits Division (the "Mustang division"), which already had two Key Account Managers (Joe Duncan ("Duncan") and Cameron Young ("Young")) who were assigned to certain chain accounts. The Mustang division also had two sales managers who directly supervised their respective sales staffs (Brent Lewis ("Lewis") and Mike Dreyer ("Dreyer")).

While working for Glazer's, Horak completed assignments provided to him by O'Donovan. His day-to-day job duties were not specifically defined. Horak conducted pricing surveys at the different stores in the Mustang division, analyzing the information and suggesting price changes regarding Glazer's pricing where needed. He also assisted salespeople in establishing better retailer relationships, and leveraged his long relationships with contacts at certain accounts in order to obtain permission to set up displays. Horak facilitated Glazer's participation in events at a local country club and assisted with marketing and advertising activity. It is undisputed that Horak's job performance with Glazer's was satisfactory.

Beginning in April 2003, McNamara and O'Donovan began requiring Horak to complete a "daily itinerary" and provide it to O'Donovan. McNamara made the suggestion to O'Donovan the Horak prepare the itineraries so that they would have a clearer idea of what he was doing, and Glazer's

2

would be better able to utilize Horak's skills. Horak was asked to provide information in the daily itineraries such as the accounts on which he would be calling, the order in which he planned to call on the accounts, and the duties to which he would be attending each day. O'Donovan testified that these itineraries were required of Horak to keep track of his whereabouts and because his duties were not specifically defined. Horak also testified that he had been given the discretion and freedom to visit whatever accounts he chose, spent most of his time out of the office, and that some days he did not come into the office when he would go directly to visit accounts.

The itineraries took Horak 2-3 minutes each day to complete. O'Donovan did not require any of the other managers he supervised to prepare daily itineraries. McNamara testified that the other two Key Accounts Managers in the Mustang division (Duncan and Young) were not required to complete itineraries because they were assigned to handle specific accounts, and therefore McNamara and O'Donovan had a better understanding of what they were doing. Although Horak contends that "younger" managers were not required to prepare daily itineraries, this contention is not supported by the record. Duncan (one of the other Key Accounts Managers who was not required to do daily itineraries) was only two years younger than Horak.

During the fall of 2003, Glazer's began examining the financial performance of its Texas operations. During the fourth quarter of 2003, revenues had increased by more than 25% as compared to the same period in 2002, but profits had increased by only 1% over the same time period. Townes was then tasked with exploring ways to reduce the company's cost structure. In early 2004, he asked Glazer's regional vice presidents and branch managers to look for jobs they considered non-essential. These non-essential positions were to be eliminated through attrition, transfers, and if needed, a reduction-in-force.

McNamara determined that Horak's position was non-essential, and informed Carleton that

Horak's position could be eliminated without negatively impacting the profitability of the Mustang division. Additionally, the other two Key Accounts Managers, Duncan and Young, were earning $66,500 and $64,000 respectively, while Horak was paid $144,000. Horak also was earning more than his supervisors O'Donovan and McNamara. Townes made the decision to terminate Horak's employment, with input from Carleton. At the time, Townes was 62 years old and Carleton was 55. Horak's position was one of six positions eliminated in Glazer's Dallas Branch. Two of those employees retired voluntarily, and one took a transfer to the corporate office. Therefore, three employees were let go, including Horak. The other two employees laid off were 32 and 48 year old females.

Townes and Carleton were unable to find an alternate management position for Horak. Therefore, Townes and a human resources representative met with Horak on July 30, 2004 and informed him that his position had been eliminated. Glazer's offered Horak a severance package, which he eventually refused, his termination was processed on September 10, 2004. At the time of his termination, Horak was 59 years of age. The duties being performed by Horak were redistributed to other employees, and his former position has not been filled. Duncan (age 58) and Young (age 46) were retained as Key Accounts Managers.

After filing a charge of discrimination with the EEOC and obtaining a right to sue letter, Horak brought this case against Glazers, claiming that he was laid off due to age discrimination in violation of the Age Discrimination in Employment act, 29 U.S.C. § 621, *et seq*. ("ADEA"), and under the Texas Commission on Human Rights Act, ("TCHRA"), Tex. Lab. Code § 21.001, *et seq*. Glazer's now moves for summary judgment on Horak's claims.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment

4

evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

**III.     Defendant's Motion for Summary Judgment**

Glazer's moves for summary judgment on Horak's claim that his discharge was due to age discrimination, contending that there is no genuine issue of material fact regarding his claims under both the ADEA and TCHRA, and that therefore it is entitled to judgment as a matter of law.

**A.     Standards for Age Discrimination Claims**

Although Horak relies upon both the ADEA and the TCHRA to provide a statutory basis for his age discrimination claim, the law governing claims under the two statues is identical. *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 n.2 (5th Cir. 1999); *Colbert v. Georgia-Pacific Corp.,* 995 F. Supp. 697, 701 (N.D. Tex. 1998). Therefore, these claims may be considered together.

Under the ADEA, it is illegal for an employer to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to the terms and conditions of his employment due to

his age. 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, a plaintiff must demonstrate a *prima facie* case of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 352 (5th Cir. 2005), *citing Rachid v. Jack in the Box, Inc.,* 376 F.3d 305, 312 (5th Cir. 2004).

If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either 1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or 2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *Id.* If the plaintiff demonstrates under the second alternative that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. *Id.* If the employer fails to carry this burden, plaintiff will prevail. *Id.*

**B.     Horak's *Prima Facie* Case**

To establish a *prima facie* case of discriminatory treatment based on age, Horak must prove that: 1) he is within the protected class; 2) he was qualified for his position; 3) he suffered an adverse employment decision; and 4) he was replaced by someone younger or treated less favorably than similarly situated younger employees. *Smith v. City of Jackson, Mississippi,* 351 F.3d 183, 196 (5th Cir. 2003), *aff'd on other grounds,* 544 U.S. 228 (2005); *Sanstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002), *cert. denied,* 539 U.S. 526 (2003). In a job elimination or reduction in force case, such as this, the Fifth Circuit has held that the fourth element of the plaintiff's *prima facie* case is more appropriately described as whether after the plaintiff's discharge others who were not members of the protected class remained in similar positions. *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 318 (5th Cir. 1997); *Meinecke v. H&R Block of Houston,* 66 F.3d 77, 83 (5th Cir. 1995). For purposes of summary

6

judgment, Glazer's admits that Horak has met the first three elements of his *prima facie* case of age discrimination. Therefore, the court will examine only the fourth element – whether Horak was replaced by someone younger, otherwise treated less favorably than similarly-situated younger employees, or whether individuals outside the protected class remained in similar positions.

### 1. Replacement by Younger Employees

It is undisputed that Glazer's did not hire anyone to fill Horak's Key Accounts Manager position. Horak first contends that he was replaced by younger employees because his former job duties were reassigned to a variety of employees who are younger than he. When a terminated employee's job duties are distributed among other employees after termination, those employees do not "replace" the terminated employee in the context of a *prima facie* case of discrimination. *Martin v. Bayland, Inc.,* 403 F. Supp. 578, 583 (S.D. Tex. 2005), *aff'd* 2006 WL 1308017 (5th Cir. 2006); *Dulin v. Dover Elevator Co.,* 1997 WL 88239, *2 (N.D. Miss. 1997), *aff'd* 139 F.3d 898 (5th Cir. 1998); *Baker v. Gregg County,* 33 S.W.3d 72, 81-82 (Tex. App. – Texarkana 2000, appeal dismissed). Therefore, this evidence will not establish the fourth element of Horak's *prima facie* case.

### 2. Disparate Treatment

Horak also attempts to establish the fourth element of his *prima facie* case by showing that he was treated differently than similarly situated younger employees.

### i. Daily Itineraries

Horak argues that because he was the only manager in the Mustang division who was required to prepare daily itineraries, he was treated differently because of his age. To show disparate treatment between different individuals, those individuals must be similarly situated – meaning that their circumstances must be "nearly identical." *Keelan v. Majesco Software, Inc.,* 407 F.3d 332, 345 (5th Cir. 2005); *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1090 (5th Cir. 1995). Horak has identified no

7

other manager whose position was similar to his, with undefined duties and the flexibility to work any accounts at any time. Therefore, he cannot successfully establish a *prima facie* case of discrimination by showing that the other managers who had defined territories or accounts to cover but were not asked to prepare daily itineraries were similarly situated to him.

### ii.     Assignment to Less Stable Position

Horak also argues that he was a victim of disparate treatment because Lewis and Young (younger employees with less experience in the industry) were retained in their managerial positions when he was terminated. It is undisputed that Horak's position was eliminated in the July 2004 reduction in force, whereas Lewis and Young's positions were not eliminated. This argument actually centers upon the positions Horak, Lewis and Young were placed into after Glazer's acquisition of Longhorn. Horak essentially argues that he was intentionally placed into a more vulnerable position by Glazer's when it gave him the Key Accounts Manager position he held.

The court first notes that there is no factual support found in the record for Horak's inference that Glazer's knowingly assigned him to a less stable position after the acquisition of Longhorn in late 2002. Even if such facts were established, and viewed in the light most favorable to Horak, there is no proof that such a decision was made because of his age. Further, even if an inference of disparate treatment based upon age could be drawn from that decision (which it cannot), the decision in late 2002 to assign Horak to the Key Accounts Manager position was made approximately a year and a half prior to the July 2004 reduction in force. This action is simply too remote in time to be probative of Glazer's motive when it later made the decision to eliminate Horak's position. *Mato v. Baldauf,* 267 F.3d 444, 453 (5th Cir. 2001), *cert. denied,* 536 U.S. 922 (2002). Additionally, Horak's speculation that he was assigned to an unstable position whereas his younger co-workers received more stable assignments amounts to his subjective belief – not competent summary judgment proof – of discrimination. Such

8

a subjective belief, however genuine, will not permit Horak to avoid summary judgment. *Lawrence v. University of Texas Medical Branch at Galveston,* 163 F.3d 309, 313 (5th Cir. 1999).

Finally, to the extent that Horak is alleging a separate incident of age discrimination based upon his initial assignment to the position he held at Glazer's, such a claim would be time barred. An age discrimination claim must be filed with the EEOC within 300 days of the alleged discriminatory practice. 29 U.S.C. § 626(d)(2); *Conaway v. Control Data Corp.,* 955 F.2d 358, 362 n.2 (5th Cir.), *cert. denied,* 506 U.S. 864 (1992). In his Complaint, Horak states that he filed his charge of age discrimination with the EEOC on November 2, 2004, more than 300 days after he was assigned to the Key Accounts Manager position. Therefore, Horak cannot assert this discrimination claim here. For the reasons stated above, Horak has not shown that he received disparate treatment when assigned to his Key Accounts Manager position following the acquisition of Longhorn, and cannot rely on this contention to establish the fourth element of his *prima facie* case.

### iii.   Varying Reasons for Discharge

Horak also argues that he has satisfied the fourth element of his *prima facie* case because Glazer's gave him "different and varying" reasons for his termination. Most of the testimony cited by Horak in support of this argument consistently shows that Glazer's expressed to him that he was terminated as a cost cutting measure. The other evidence relied upon by Horak is an alleged statement by Don Pratt ("Pratt"), who served as president of another division, that it was his understanding that Horak and another employee (Bob Rippner) were only to be employed for a limited period of time after Glazer's acquired Longhorn. It is undisputed that Pratt did not make the decision to eliminate Horak's position, and Pratt's purported comment also makes no reference to Horak's age. Accordingly, this evidence does not raise an inference of age discrimination.

### iv. Not Considered for Other Positions

Horak also states that because he was not considered for positions that became available at Glazer's following his discharge, he was treated differently than younger employees during the reduction in force, and discharged because of his age. This argument fails for two reasons. First, Glazer's has set forth competent summary judgment proof that before it eliminated Horak's position, Townes and Carleton attempted to find an alternate management position for Horak within the region, but did not find an appropriate position available. Horak has not disputed these facts. Secondly, evidence that positions with Glazer's subsequently became available after Horak's termination is not probative of whether Glazer's earlier decision to eliminate his job was motivated by age bias. *Armendariz v. Pinkerton Tobacco Co.,* 58 F.3d 144, 150 (5th Cir. 1995), *cert. denied,* 516 U.S. 1047 (1996). For all of the foregoing reasons, the court concludes that Horak has failed to set forth sufficient summary judgment proof establishing the fourth element of his *prima facie* case.

### C. Glazer's Legitimate, Non-Discriminatory Reason

Even if Horak had successfully established his *prima facie* case of age discrimination (which he has not), the court finds that Glazer's has carried its burden of production by articulating a legitimate, non-discriminatory reason for its decision to eliminate Horak's position. Glazer's has set forth evidence that due to declining profits, it undertook a cost cutting campaign that included the elimination of several positions to save on personnel expenses. Significantly, Glazer's has also shown that Horak was earning more than twice what his peers earned, and also was paid more than O'Donovan (his supervisor) and McNamara (O'Donovan's supervisor). Finally, Glazer's has provided evidence that Horak's job was eliminated and has not been filled since his departure from the company.

The need to cut costs and job elimination are both legitimate, non-discriminatory reasons for an employee's discharge. *See Webster v. Texas Engineering Extension Service,* 204 F.3d 1115 (5th Cir.

1999); *Armendariz,* 58 F.3d at 150, *citing Hanchey v. Energas Co.,* 925 F.2d 96, 98 (5th Cir. 1990). Therefore, Horak must either raise a genuine issue of material fact whether Glazer's reasons are a pretext for discrimination, or that although Glazer's articulated reasons are true, they are not the only reasons for its conduct, and another motivating factor was Horak's age. *Machinchick,* 398 F.3d at 352.

### D.     Proof of Pretext or Motivating Factor

Attempting to avoid summary judgment, Horak argues 1) that Glazer's stated reasons for his discharge are untrue; and 2) that his age was a motivating factor in his discharge.

#### 1.     Pretext Analysis

Horak does not dispute Glazer's evidence that during the fourth quarter of 2003, revenues had increased by more than 25% over the same time period in 2002, but that profits had risen only 1% over the same time period. Instead, he tries to supply a reason for the decline in profits – that Glazer's had acquired a new distributorship and hired a number of new employees as part of that acquisition. Doing so does not sufficiently show that the figures cited by Glazer's, which are backed by competent summary judgment evidence, are untrue.

Additionally, Horak attempts to establish a material fact issue regarding pretext by attacking the decision-making process Glazer's went through to eliminate positions. Horak argues that because Townes undertook the job of cutting costs without any particular parameters in terms of the number of positions he wanted to cut, did not rank employees in terms of their value to the company, and did not have any particular financial objective in mind, Glazer's is being untruthful about the real reason for his termination. At best, this argument might suggest that Glazer's made the "wrong" decision in choosing to eliminate Horak's position versus someone else's. Employment discrimination laws are not intended to be a vehicle for transforming the courts into personnel managers who second-guess the business decisions of employers. *Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir.

2005), *cert. denied,* 126 S. Ct. 1027 (2006); *Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1507-08 (5th Cir. 1988). Attacking Glazer's methodology for deciding which positions should be eliminated does not raise a genuine issue of material fact whether Glazer's was actually motivated by age-related animus.

Horak's next argument regarding pretext is that his job was not non-essential, despite McNamara's perception that it could be eliminated and Horak's duties redistributed to existing employees. Again, this argument amounts to a second-guessing of the merits of Glazer's decision to eliminate his job. Even if McNamara incorrectly determined that it did not need someone in Horak's position, such evidence does not sufficiently raise an issue of fact regarding pretext.

Finally, Horak tries to establish pretext by repeating his earlier arguments that because his former job duties were redistributed, he was "replaced" by younger employees, and that he was subjected to disparate treatment because he was required to submit daily itineraries. For the same reasons the court has stated above with respect to Horak's *prima facie* case, the court finds that these facts do not sufficiently dispute the veracity of Glazer's articulated reasons for his discharge, and do not raise a material fact issue as to pretext.

### 2.   Whether Age Was a Motivating Factor

In addition to arguing that Glazer's reasons for his discharge are a pretext for age discrimination, Horak contends that his discharge flowed from a mixture of legitimate and illegitimate motives. Here, Horak recycles some of the same arguments he has relied upon to establish his *prima facie* case and to show pretext – that his duties were assumed by a number of younger employees, he was required to prepare daily itineraries, and that similarly situated younger employees were not terminated. For the reasons stated above, Horak's evidence regarding the reassignment of his job

responsibilities and the daily itineraries does not raise a genuine issue of material fact whether Horak's age was a motivating factor in his termination.

Furthermore, the court finds that Horak has not sufficiently established that the younger employees who were not terminated were similarly situated to him, meaning that their circumstances were "nearly identical." *Keelan,* 407 F.3d at 345; *Mayberry,* 55 F.3d at 1090. The two Key Accounts Managers who were retained (Duncan and Young) each earned less than half of what Horak was paid. For this reason alone, their circumstances could not be described as "nearly identical" to Horak, especially in light of Glazer's goal of cutting its personnel expenses. Further, the court notes that Duncan, one of the retained Key Accounts Managers, was 58 years old at the time of Horak's discharge – only two years younger than Horak. Horak has failed to set forth sufficient evidence to raise a genuine issue of material fact whether his age was a motivating factor in Glazer's decision to eliminate his position.

### IV.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is **granted,** and Horak's claims are hereby **dismissed with prejudice.** Judgment will be entered by separate document.

**SO ORDERED.**

Signed  July18, 2006.

s/Ed Kinkeade
ED KINKEADE
UNITED STATES DISTRICT JUDGE
